## Case No. 16,220.

### UNITED STATES v. SANDERS.

[Hempst. 483.] [1]

Circuit Court, D. Arkansas.   April, 1847.

PARENT AND CHILD—EVIDENCE—DECLARATIONS—WHO ARE INDIANS—MIXTURE OF RACES—PARTUS SEQUITUR VENTREM —JURISDICTION OF FEDERAL COURTS.

1. The declarations of a father as to the maternity of his child are competent evidence; but the circumstances under which they were made and the weight to be given to them must be left to the jury.

2. The child must partake of the condition of the mother; and if the mother is an Indian, the child will be so considered, for the purposes of the intercourse act of 1834 [4 Stat. 729], whether the father is a white man or an Indian.

[Cited in McKay v. Campbell, Case No. 8,-840.]

3. The child of a white woman, by an Indian father, would be deemed of the white race; the condition of the mother, and not the quantum of Indian blood in the veins determining the condition of the offspring.

[Cited in McKay v. Campbell, Case No. 8,-840. Disapproved in Ex parte Reynolds, Id. 11,719; U. S. v. Ward, 42 Fed. 322.]

4. The offspring of a free-woman is free, and so on the other hand, the issue of a slave is a slave likewise.

5. The rule partus sequitur ventrem generally obtains in this country.

6. Questions of jurisdiction ordinarily belong to the court as matters of law; but where the jurisdiction depends upon facts to be found by a jury, the latter may, under the direction of the court, as to matter of law, affirm through the medium of a general verdict, that there is or is not jurisdiction.

7. The court has no jurisdiction to punish offences under the intercourse law of 1834 (9 Bior. & D. Laws, 135 [4 Stat. 729]), committed by one Indian against the person or property of another Indian.

Murder. The defendant [Ellis Sanders], a Cherokee Indian, was indicted for the mur-

1 [Reported by Samuel H. Hempstead, Esq.]

der of Billy, a white boy, in the Cherokee country, west of Arkansas, in 1844. The defendant plead not guilty, and on the trial the proof on the part of the prosecution was, that in the latter part of July, 1844, the defendant, without any provocation or excuse, killed Billy by a blow on the head with a large maul, breaking the skull, and of which blow Billy instantly died. It was proved that the deceased was an inoffensive idiot boy, and was reputed to be white. The evidence fully established the fact that it was a wanton and unprovoked murder, and on that point there was no difference of opinion. The prisoner introduced various witnesses, who proved that they knew the father of the deceased, and had frequently heard him say in his lifetime that the mother of this boy was an Indian woman, and on this the prisoner rested his defence. On this point there was some contradictory evidence, but the weight of it was in favor of the position that the mother of the boy was an Indian woman, although it did not appear to what tribe she belonged, or whether she was a full-blooded Indian or not.

E. H. English, for the prisoner, contended that the exception in the intercourse act of 1834 (9 Bior. & D. Laws, 135) applied to this case, and that the evidence sufficiently established the fact that the offence charged in the indictment was committed by one Indian upon the person of another Indian, within the meaning of that exception, and that, consequently, he was not punishable by this court, however enormous the offence, which the counsel was not disposed to palliate.

S. H. Hempstead, Dist. Atty., for the prosecution, in his argument to the jury, insisted that the deceased was a white boy in contemplation of law. The proof was clear that the father was a white man, of the white race, and although the testimony adduced by the prisoner, if believed, favored the idea that the mother was an Indian woman, or had Indian blood in her veins, yet it was not satisfactorily shown, for no one ever saw her,—no one pretended to say to what tribe, if any, she belonged,—whether she was a full blood, half breed, or quarter breed Indian, where she lived, or when she died. Unimpeachable witnesses had sworn that the boy was generally reputed to be white, and this should outweigh the vague testimony for the defence; and that as to the guilt of the prisoner that could not and had not been disputed, for every one saw it was a cold-blooded and shocking murder.

Before DANIEL, Circuit Justice, and JOHNSON, District Judge.

DANIEL, Circuit Justice, charged the jury that it would not be necessary to give any particular direction as to the law of murder, because there was no contest on that point at all, nor had any justification been attempt-

ed for the killing of the deceased. If the jury believed the witnesses, who had not indeed been impeached in any way, it was an atrocious and wilful murder. The prisoner did not rest his defence on his innocence, but on the want of jurisdiction in this court to punish him at all. He is charged in the indictment to be a Cherokee Indian, and the deceased to have been a white boy and not an Indian, thus presenting a case, as far as the indictment is concerned, within the jurisdiction of the court. The witnesses for the government, if believed, establish the averment in the indictment, that the defendant is a Cherokee Indian, and also state that the deceased was called and generally reputed to be a white boy, not of any Indian tribe. To rebut this the prisoner introduced witnesses, who have stated that they knew the father of the boy, that he was a white man, lived in the Indian country, and that they had frequently heard him declare that the mother of the deceased was an Indian woman. The declarations of a father as to the maternity of a child are admissible and competent evidence (1 Phil. Ev. 238, 239: 2 Phil. Ev. [Cowen & Hill's notes] notes 463–466, 468); but the circumstances under which they are made, and the weight to be attached to them are matters for the jury to determine.

There has been considerable discussion as to who ought to be considered an Indian within the purview of the proviso of the 25th section of the intercourse law of 1834, which declares, that the laws of the United States, for the punishment of crimes in the Indian country, shall not extend to crimes committed by one Indian against the person or property of another Indian. Gord. Dig. 430. That act does not define an Indian, but uses a general term without embracing or excluding any particular class of persons. On consultation with my brother judge we concur in laying down this rule as the safest: that the child must follow the condition of the mother. If the mother is an Indian woman her offspring must be considered Indians within the meaning of the proviso alluded to, whether the father be a white man or Indian. And so, on the other hand, the child of a white woman by an Indian father, would, for all the purposes of that act, be deemed of the white race; the condition of the mother, and not the quantum of Indian blood in the veins, determining the condition of the offspring. This is substantially following the common law rule, which was borrowed from the civil law. Just. Inst. bk. 1, tit. 4, p. 13. The rule of the civil law was, that one born of a free mother was free, although the father was a slave; and so on the other hand, if the mother was a slave the offspring partook of her condition. Ruth. Inst. 247; Shelton v. Barbour, 2 Wash. (Va.) 67. There can be no doubt that the rule partus sequitur ventrem generally obtains in this country. Hudgins v. Wrights,

1 Hen. & M. 137; Pegram v. Isabell, 2 Hen. & M. 193; Chancellor v. Milton, 1 B. Mon. 25; Esther v. Akins' Heirs, 3 B. Mon. 60.

If the jury believe from the evidence that the mother of the boy Billy was an Indian woman, we are of opinion on the rule just laid down, that her offspring was also an Indian within the meaning of the exception alluded to, and consequently that the court is destitute of authority to punish the prisoner, however guilty he may be, and that the jury ought to return a verdict of not guilty.

Questions of jurisdiction ordinarily belong to and are decided exclusively by the court as pure matters of law; but here it is necessary that certain facts should be passed upon by the jury before that question can properly arise. Where the jurisdiction, however, depends upon the existence of facts, the jury may, under the direction of the court as to matter of law, affirm through the medium of a general verdict that there is or is not jurisdiction.

Verdict not guilty, and prisoner discharged.